```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
XIN LIN,

                    Petitioner,             NOT FOR PUBLICATION
                                            MEMORANDUM & ORDER
    -against-                               15-CR-628-3 (CBA)
                                            17-CV-4533 (CBA)
UNITED STATES OF AMERICA,                   18-CV-5198 (CBA)


                    Respondent.
---------------------------------------------------------x
```
**AMON, United States District Judge:**

On September 8, 2016, Petitioner Xin Lin pled guilty to count ten of a superseding indictment, which charged him with Hobbs Act conspiracy in violation of 18 U.S.C. § 1951(a), pursuant to a plea agreement. (ECF Docket Entry ("D.E.") # 171.)  On March 9, 2017, Lin was sentenced to a 78-month term of imprisonment.  (D.E. # 299.)  He was also ordered to pay $4,500 in restitution.  (Id.)  Before the Court is Lin's petition for a writ of error coram nobis, challenging his conviction, sentence, and the order of restitution entered against him.  (United States v. Lin, 18-cv-5198 (CBA), D.E. # 1 ("Writ") (E.D.N.Y. Apr. 2, 2018).)  For the reasons discussed below, Lin's petition is DENIED.

## BACKGROUND

As noted above, Lin pled guilty to Hobbs Act conspiracy in violation of 18 U.S.C. § 1951(a).  Paragraph 4 of the plea agreement provided that Lin "agree[d] not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 97 months or below." (D.E. # 381 ("Gov't Br."), Ex. A ¶ 4.)  At his plea allocution, the Court drew Lin's attention to that provision of his agreement:

1

THE COURT: All right, now, there's one provision of the agreement that I want to bring specifically to your attention because it involves giving up another right that you have. Paragraph 4 of the agreement, it says:

The defendant agrees not to file an appeal, or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 97 months or below.

What that means, as I understand it, is if I give you a sentence of 97 months, or something less than 97 months, that you cannot go to a higher court and complain that I made a mistake in imposing your sentence. You're giving up that right. That's the end of the road.

Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: And similarly, you can't come back to court, after you've been serving your prison term for some time, and file a habeas corpus petition contending that there was some problem with your conviction or sentence, under that circumstance where I give you a sentence of 97 months or less.

Do you understand that?

THE DEFENDANT: I know.

(Gov't Br., Ex. B at 11:17–12:14.)

The Court also ensured Lin's understanding of the charge against him:

THE COURT: All right, let me just summarize the charge for you. The charge says:

Between May of 2015 and June of 2015, the defendants, and it names you, Xin Lin, and it names other defendants, Qian Zheng, Kai Huan Huang, Xue Jiang Gao, and others, did knowingly and intentionally conspire to obstruct and delay and affect commerce, and the movement of any article or commodity in commerce, by extortion of John Doe 2.

So what they would have to prove is, first of all, that it was a conspiracy. That means that you had to form an agreement with at least one person, and the purpose of this agreement was to extort . . . from this John Doe 2, money, and by doing that, commerce was obstructed or delayed.

(Id. at 6:6–21.)  When asked if he understood, Lin responded "Yes." (Id. at 6:21–23,)  Lin later stated in his own words: "In May of 2015, I agreed with another person to help collect a debt from an individual.  The manner that I approached him and confronted him was to make him fearful of me." (Id. at 17:7–10.)

> At Lin's sentencing, the Government described his conduct in the following way:
>
> The defendant led a group of approximately seven other men into the victim's parlor.  They surrounded him, demanded money from him, and when it became clear that they were not going to get money, began to beat him with their fists and with wooden stools.  They knocked him down.  They kept beating him.  And then they destroyed his parlor, smashing tables and smashing chairs and smashing his television.

(D.E. # 318 ("Sent. Tr.") at 21:21–22:3.)  The Government provided photographs of the damage to the parlor and of the victim's injuries.  (D.E. # 285 ("Gov't Sent. Mem."), Exs. A, B.)

The Court calculated Lin's offense level as 25 based on a U.S.S.G. § 2B3.2(a) base offense level of 18, a two-point enhancement for threatening bodily injury pursuant to U.S.S.G. § 2B3.2(b)(1), a four-point enhancement for using a dangerous weapon pursuant to U.S.S.G. § 2B3.2(b)(3)(A)(iv), a four-point enhancement for causing "Serious Bodily Injury" pursuant to U.S.S.G. § 2B3.2(b)(4)(B), and a three-point reduction for acceptance of responsibility.  (Sent. Tr. at 11:6–13; Gov't Sent. Mem. at 3.)  Based on a criminal history category of 3, the Court calculated Lin's Guidelines range as 70 to 87 months.  (Sent. Tr. 11:6–13.)

At sentencing, Lin objected to the application of the "Serious Bodily Injury" enhancement. (Id. at 8:1–3.)  The Government argued that "the victim[] and the doctor both testified after th[e] beating, the victim suffered not only a fracture to a bone in his hand, but also a separate deformity to the finger.  And the doctor, as a result of this, referred the victim to a surgeon because surgery would be required to ameliorate the injuries to the hand." (Id. at 9:12–17.)  The Court concluded that this injury "comes within the language of the guideline" because "it is a permanent type of

3

injury" that surgery was needed to correct. (Id. at 10:17–18, 11:6–13.) Lin did not object to the application of the dangerous weapon enhancement at sentencing, so it was not discussed in detail at his hearing. The Government's $4,500 restitution order was also entered without objection, based on trial testimony and a loss affidavit from the victim. (Id. at 20:14–16, 21:1–3.)

Lin filed a petition for a writ of habeas corpus on July 16, 2017. (D.E. # 336.) On November 28, 2017, he filed a letter with the Court asking it to "set aside and not consider that motion" because "[t]he individual who assi[s]ted [him] in preparing that motion took considerable advantage of [his] lack of English language comprehension" by filing a motion that is "not related to [him] or [his] case." (D.E. # 357.) He "ask[ed] that [the Court] please discard the motion filed and expunge it from the records if possible." (Id.) As per Lin's request, the Court will not consider his July 16, 2017 petition. Lin filed a petition for a writ of error coram nobis on March 28, 2018. (See Writ.) Lin "moves this Court to construe this Writ the same as a [§] 2255 . . . and grant him the relief he seeks." (Writ at 2.) The Government filed a brief in opposition on May 21, 2018. (See Gov't Br.)

## STANDARD OF REVIEW

"A petition for a writ of coram nobis provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241." Chaidez v. United States, 568 U.S. 342, 345 n.1 (2013). "Coram nobis is not a substitute for appeal, and relief under the writ is strictly limited to those cases in which 'errors . . . of the most fundamental character' have rendered 'the proceeding itself irregular and invalid.'" Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996) (alteration in original) (quoting United States v. Carter, 437 F.2d 444, 445 (5th Cir. 1971) (per curiam)). "A petitioner seeking such relief must demonstrate that 1) there are circumstances compelling such action to

4

achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Id. at 79 (internal quotation marks, citations, and alterations omitted).

The federal habeas corpus statute provides that "[a] prisoner in custody under sentence . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011). "An exception applies, however, if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." Id.

The Court reviews Lin's petition with "a lenient eye" due to his pro se status. See Williams v. Kullman, 722 F.2d 1048, 1050 (2d Cir. 1983).

## DISCUSSION

### I. Procedural Issues

Before the Court discusses the merits of Lin's challenges to his conviction, it addresses the Government's procedural arguments.

### A. Scope of Coram Nobis Review

The Government argues that Lin cannot pursue coram nobis relief because he remains incarcerated. (Gov't Br. at 4.) Although "federal courts are authorized to grant the common law writ of error coram nobis under the terms of the All Writs Act, 28 U.S.C. § 1651(a)," "[c]oram nobis is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a

5

writ of habeas corpus." Fleming v. United States, 146 F.3d 88, 89, 89–90 (2d Cir. 1998) (per curiam). Because Lin remains in custody, he is procedurally barred from seeking coram nobis. See United States v. Henry, 205 F.3d 1325 (Table) (2d Cir. 2000) (summary order); Dong Qi Ming v. United States, No. 09-cv-745 (RJS), 2013 WL 2397674, at *4 (S.D.N.Y. May 31, 2013); United States v. Dos Santos, 979 F. Supp. 949, 961 (E.D.N.Y. 1997).

Nonetheless, Lin requested "this Court to construe this Writ the same as a [§] 2255," (Writ at 2), and pro se filings are to be "liberally construed," Williams, 722 F.2d at 1050. The Court therefore converts Lin's petition into one for habeas corpus pursuant to 28 U.S.C. § 2255—the proper procedural vehicle for an incarcerated individual.

### B. Appeal and Habeas Waiver

Second, the Government argues that Lin knowingly and voluntarily waived his right to appeal or collaterally challenge his conviction or sentence if the sentence imposed was 97 months or less. (Gov't Br. at 5.) Lin signed a waiver to that effect, (Gov't Br., Ex A. ¶ 4), and the Court ensured that his waiver was knowing and voluntary at his allocution, (Gov't Br., Ex B. at 11:17–12:14).

"It is well established that a federal defendant may waive both his right to direct appeal and his § 2255 rights." Cross v. Perez, 823 F. Supp. 2d 142, 149 (E.D.N.Y. 2011) (citing Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001)). A defendant has "a valid claim that the waiver of appellate rights is unenforceable . . . when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to

6

mandamus." United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000) (internal quotation marks, citations, and alterations omitted). Lin does not argue that any of these exceptions render his appeal and collateral review waiver unenforceable. Nor are any of these reasons clear from the face of the record. As such, Lin's appeal and collateral review waiver bars the present petition.

### C. Procedural Default

Even if Lin's petition was not barred by the waiver contained in his plea agreement, it would be barred by his failure to file for direct review. "In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011). "An exception applies, however, if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." Id. Lin was sentenced on March 9, 2017 and filed his original § 2255 on July 16, 2017 without seeking appeal in the Second Circuit. (D.E. ## 299, 336.) Because "a waiver of appeal provision in a plea agreement d[oes] not constitute 'cause' for failing to take a direct appeal," Garcia-Santos, 273 F.3d at 508, and because Lin has not posited any other "cause" to justify his failure to file a direct appeal, he cannot satisfy the first exception. As to the second exception, Lin's "actual innocence" argument—that he did not "obtain" property from the victim and therefore could not have committed Hobbs Act extortion—is meritless, as will be discussed in more detail below. Therefore, Lin's petition is also barred because he did not file for direct review.

### II. Merits

Even if Lin's petition was not procedurally barred, it fails on the merits. The Court discusses each of Lin's arguments in turn.

### A. "Obtaining" Property

Relying on Sekhar v. United States, 570 U.S. 729 (2013), Lin's primary argument is that he never "obtained" any "property" within the meaning of the Hobbs Act and that he therefore did

7

not allocate to facts sufficient to support his conviction. (Writ at 2–9.) Sekhar clarified that to satisfy the "obtaining of property" prong of Hobbs Act extortion under 18 U.S.C. § 1951(b)(2), an individual must cause "not only the deprivation but also the acquisition of property" and also that "[t]he property extorted must . . . be transferable." Sekhar, 570 U.S. at 734 (emphasis in original) (internal quotation marks omitted). But Lin's argument misapprehends a critical difference between Hobbs Act extortion under § 1951(b)(2) and Hobbs Act conspiracy under § 1951(a)—the crime to which he pled guilty. (See D.E. # 130 at 15 (superseding indictment listing "count ten" as "extortion conspiracy" under "Title 18, United States Code, Sections 1951(a) and 3551 et seq.").) "While a Hobbs Act substantive offense requires proof of (1) interference with commerce and (2) extortion, a Hobbs Act conspiracy charge does not carry those same requirements." United States v. Clemente, 22 F.3d 477, 480 (2d Cir. 1994) (citation omitted). "In order to establish a Hobbs Act conspiracy, the government does not have to prove any overt act." Id. "The government needs to prove only that an agreement to commit extortion existed, not that extortion was actually committed." Id. Thus, Lin's argument that he did not actually deprive the victim of property is immaterial to his conviction for Hobbs Act conspiracy, so long as he agreed to do so, which, at his plea allocution, he stated that he did. (Gov't Br., Ex. B at 17:7–10 ("In May of 2015, I agreed with another person to help collect a debt from an individual. The manner that I approached him and confronted him was to make him fearful of me.").) Lin's allocution is therefore sufficient to uphold his conviction for Hobbs Act conspiracy under § 1951(a).

### B. "Serious Bodily Injury" Enhancement

Lin's second argument is that the Court misapplied the "Serious Bodily Injury" enhancement because the fact that the victim did not seek medical attention for his injuries for thirty days belies the seriousness of his injury. (Writ at 9–10.) The commentary to the sentencing guidelines defines "serious bodily injury," in relevant part, to mean "injury . . . requiring medical

8

intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. 1(M). The Second Circuit has recognized that "[t]his definition appears to encompass a wide range of injuries such as broken bones or other nonpermanent wounds that require 'medical intervention such as surgery, hospitalization, or physical rehabilitation.'" United States v. Ashley, 141 F.3d 63, 68 (2d Cir. 1998).

At the trial of co-defendant Kai Huan Huang, a doctor who examined Lin's victim testified that, during his examination, he diagnosed the victim with, among other things, a "fracture [on] his . . . right pinky" and "a flexion deformity on the same digit . . . that would need . . . further management and care." (D.E. # 245 at 97.) He continued: "[B]ecause he had developed a flexion deformity as a result of his injury, I couldn't provide appropriate care for the injury. He would need the services of a hand surgeon, so we provided a hand surgery appointment for him for followup with the hand surgeon." (Id. at 97–98.) Based on this testimony, the Court correctly concluded that the victim suffered an "injury . . . requiring medical intervention such as surgery." U.S.S.G. § 1B1.1 cmt. 1(M). Lin's challenge to the application of the "Serious Bodily Injury" enhancement is therefore without merit.

### C. "Dangerous Weapon" Enhancement

Lin next argues that the Court "erred by applying a 4 point enhancement for a dangerous weapon when one was never used or found to be used." (Writ at 11.) The Government argued at sentencing, consistent with the testimony from the Huang trial and with the presentence report, that Lin "beat [the victim] with [his] fists and with wooden stools." (Sent. Tr. at 21:21–25.) The Court thus interprets Lin's petition to argue that the wooden stools did not constitute dangerous weapons within the meaning of the Guidelines.

U.S.S.G. § 1B1.1 cmt. 1(E) states in relevant part that a "dangerous weapon" is "an instrument capable of inflicting death or serious bodily injury." The aggravated assault Guideline,

9

U.S.S.G. § 2A2.2, which employs the same definition of dangerous weapon as § 2B3.2 (the Guideline applicable to Lin), supplements this definition by saying it "includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." U.S.S.G. § 2A2.2 cmt. 1. The Second Circuit has "consistently 'taken a broad view of the definition of "dangerous weapon" under the Sentencing Guidelines.'" United States v. Pope, 554 F.3d 240, 245 (2d Cir. 2009) (quoting United States v. Argon, 921 F.2d 25, 26 (2d Cir. 1990)).

In addition to the fact that a wooden stool is "capable of inflicting . . . serious bodily injury," U.S.S.G. § 1B1.1 cmt. 1(E), Lin in fact inflicted serious bodily injury on his victim with the wooden stool. Further, the Guidelines commentary makes clear that "a chair" can be a dangerous weapon "if such an instrument is involved in the offense with the intent to commit bodily injury," U.S.S.G. § 2A2.2, cmt. 1, as it was here. Lin's challenge regarding the dangerous weapon enhancement is therefore without merit.

### D. Restitution

Lin's final argument is that the Court erred in awarding $4,500 in restitution because "[n]o business records were ever submitted to the court." (Writ at 11.) However, "§ 2255 does not authorize district courts to hear collateral challenges to the restitution parts of criminal sentences where . . . restitution obligations do not equate to custodial punishment." United States v. Rutigliano, 887 F.3d 98, 101 (2d Cir. 2018). Courts have consistently held that restitution orders far more demanding than the one ordered here do not equate to custodial punishment. See, e.g., Kaminski v. United States, 339 F.3d 84, 87 (2d Cir. 2003) ($21,180 restitution order to be paid monthly at rate of ten percent of income does not equate to custodial punishment); Masour v. United States, No. 11-CR-612 (NRB), 2015 WL 1573327, at *4 (S.D.N.Y. Apr. 9, 2015) (same, where restitution order was $9,301,538 at ten percent of income per month); McEwan v. United

10

States, 279 F. Supp. 2d 462, 464 & n.1 (S.D.N.Y. 2003) (same, where restitution order was $6,984,000 at fifteen percent of income per month).[1]  Therefore, Lin's challenge to the restitution order fails.

## CONCLUSION

For the foregoing reasons, the Court DENIES Lin's petition.  Because Lin has not made a substantial showing of the denial of any constitutional right, the Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253; Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 192 F.3d 255, 259–60 (2d Cir. 1997).  The Court respectfully directs the Clerk of Court to close the case in Nos. 17-CV-4533 and 18-CV-5198.

SO ORDERED.

Dated: May 21, 2020
      Brooklyn, New York

                                                  /s/ Carol Bagley Amon
                                                  Carol Bagley Amon
                                                  United States District Judge

---

[1] Even if Lin's challenge to the restitution order were cognizable, it would fail.  The restitution order was premised on sworn trial testimony that Lin's crime caused $3,000 in damage to the victim's business, (D.E. # 245 at 41–42), and the victim submitted a loss affidavit attesting to his lost income, (see D.E. # 273).